## GRIFFIN *v.* BOARD OF TRUSTEES OF ST. MARY'S COLLEGE OF MARYLAND

[No. 329, September Term, 1969.]

*Decided June 2, 1970.*

The cause was submitted on briefs to HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

Submitted by *Karl G. Feissner, Thomas P. Smith* and *Feissner, Kaplan & Smith* for appellant.

Submitted by *Francis B. Burch, Attorney General,* and *Martin B. Greenfeld, Assistant Attorney General,* for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

In the dead of winter, February 1966, the appellee (the College) employed the appellant (Griffin) as a teacher "for the school year beginning in September 1967" at an annual salary of $13,000. The contract of employment

provided for its continuance "from school year to school year unless terminated by either party giving to the other a written notice to terminate * * * on or before the 1st day of June of the year in which the contract is to be terminated." In February 1968 Griffin filed suit in the Circuit Court for St. Mary's County against May Russell, the president of the College. He set forth in his declaration statements attributed to her which are alleged to be defamatory. The ad damnum paragraph in each of the five counts demands $500,000 compensatory damages and $1,000,000 punitive damages. On 10 May 1968 Miss Russell served written notice on Griffin that she did "not plan to recommend * * * [his] contract for renewal for 1969-70." On 15 May Griffin wrote to Wm. Aleck Loker, Esq., the chairman of the Board of Trustees of the College, requesting a "hearing before the Board with reference to * * * [his] discharge from the faculty to take effect a year hence." He was advised by Mr. Loker that the Board would hear from him and his witnesses on 14 June but that no formal charges would be filed against him. Griffin, still insisting that he be furnished with a list "of the charges against him" appeared with his attorney at the scheduled meeting of the Board. His attorney subjected the Board to a lengthy and somewhat irrelevant harangue. He suggested an absence of "basic American fairness;" he questioned the good faith "of the institution itself;" he inveighed against the Board's lack of "Americanism" equating it with the "hot dog on the Fourth of July at the ball game;" suggesting that "milk * * * [had been] spilled on the table" he insisted he and his client were "entitled to th[e] opportunity to see who is going to wipe it up;" he charged the Board with being "afraid to set forth what the charges are and have a hearing;" he demanded, in conclusion, that the Board "let some fresh air in." Mr. Loker, for the Board, replied that they were "very happy" to have heard from him; he assumed they wouldn't "hear anything from Dr. Griffin." Counsel replied, "Not 'til we know, sir, what he is charged with." He did have his client deny, however, that he had

done anything "that would be ground for \* \* \* [his] dismissal." On the following day, 15 June, Mr. Loker wrote to Griffin formally notifying him that the Board had affirmed Miss Russell's decision not to renew his contract for "the school year 1969-70." The record does not disclose all that transpired during the succeeding months but it seems that the Board offered, on 28 September, to renew Griffin's contract for the 1969-70 school year if he would dismiss the libel suit. Apparently he declined to do so and the offer was withdrawn some months later.

On 28 February 1968 the Board adopted a "policy statement." The parties seem to consider that only the portion quoted below has any relevance here:

> "Termination for cause of a continuous appointment, or the dismissal for cause of a teacher previous to the expiration of a term appointment, or *nonrenewal of the contract of a teacher who alleges a prima facie case of a violation of academic freedom* shall be considered by both a faculty committee and the governing Board. If the teacher has tenure or an unexpired appointment extending beyond the period of the proposed dismissal, the burden of proof is upon the administration to show adequate cause why he should be dismissed. *If he does not have tenure, but contends that the nonrenewal of his contract constitutes a violation of his academic freedom, the burden of proof is upon the faculty member.* In all cases where the facts are in dispute, the *accused* teacher should be informed in writing before the hearing of the charges against him and should have the opportunity to be heard in his own defense by all bodies that pass judgment upon his case. He should be permitted to have with him an advisor of his own choosing who may act as counsel. There should be a full stenographic record of the hearing available to the parties concerned." (Emphasis added.)

On 2 June 1969, 12 days short of a year after the "hearing" before the Board, Griffin filed a "Petition for Mandamus" in the Circuit Court for St. Mary's County. After alleging substantially what we have set forth above he prayed the issuance of an injunction restraining the Board from employing a teacher to replace him, the passage of an order rescinding the notice that he would not be reappointed and the issuance of a writ of mandamus ordering the Board "to provide * * * [him] with a copy of the charges and reasons for the notice of his non-reappointment" and an opportunity "to present evidence in repudiation of these charges and reasons." The Board demurred because, it said, neither the contract nor its rules and regulations require it to provide copies of charges for the "nonrenewal" of his contract of employment or to give "any reasons" therefor, and, because it had already hired a replacement, Griffin's "action is barred by laches." The trial judge, Powers, J., sustained the Board's demurrer and granted Griffin leave to amend within 15 days. A month or so later Griffin noted an appeal to this Court "from the order of court granting defendant's demurrer." The notice of appeal concludes with a grace note; the clerk was invited to "kindly further note that plaintiff does not elect to amend his declaration."

We shall dismiss Griffin's appeal because it is not an appeal from a final judgment. We have held quite often that an order sustaining a demurrer with leave to amend is not appealable. Our most recent expression in this regard will be found in *Porter v. Bingham*, 257 Md. 213 (1970). Nor does it make any difference that the action in the court below was a petition for a writ of mandamus. *Walter v. Board of County Commissioners*, 179 Md. 665 (1941). *See also Whittle v. Munshower*, 221 Md. 258 (1959). That Griffin allowed the time within which he could have amended to expire without taking any action does not improve his position. *Read Drug & Chemical Co. v. Colwill Constr. Co.*, 250 Md. 406, 422 (1968); *Maas v. Maas*, 165 Md. 342 (1933).

Perhaps we ought to point out that had we chosen to

rest our decision on a consideration of the merits of Griffin's case we would have concluded that Judge Powers was entirely correct in sustaining the College's demurrer. Griffin concedes that he does not have tenure and that, absent the "statement of policy," the College had the right to elect not to renew his contract without a hearing and without giving him reasons therefor. His concession is in accord with the weight of authority. *See Williams v. School District,* 447 S.W.2d 256, 270 (Mo. 1969) ; *Bonner v. Texas City Indep. School District,* 305 F. Supp. 600, 618 (S.D. Tex. 1969) ; and *Parker v. Board of Education,* 237 F. Supp. 222, 227 (D. Md. 1965), *aff'd per curiam,* 348 F. 2d 464 (4th Cir. 1965). But, says Griffin, the "policy statement" adopted 28 February 1968 confers such a right upon him. We do not agree. The statement saddles him with the necessity of alleging "a prima facie case of a violation of academic freedom." He has come no closer to this than to quote from the "statement" in his letter of 22 May 1968 to Mr. Loker. Nor, indeed, have we found in the transcript of the record anything which, prior to the hearing of 14 June 1968, could be said to be a "contention" that his academic freedom had been violated in any respect. Nor can he claim to be an "accused teacher" in a case where "facts are in dispute." It does not appear that his appointment was being terminated "for cause" or that he was being dismissed "for cause," prerequisites, it seems to us, to being considered an "accused teacher." Neither does there seem to be any dispute in respect of the facts. It is clear, we think, that, in the circumstances, the College, although content to have him remain on the faculty for another full school year, had a right not to extend his employment beyond that year. Since we would not, in any event, have reached the question of laches we shall forego any comment in that regard.

*Appeal dismissed.*
*Appellant to pay the costs.*