ERIKA, INC., a corp., Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF ALABAMA, a corp., Defendant.

Civ. A. No. 77–M–1601.

United States District Court,
N. D. Alabama, S. D.

Sept. 2, 1980.

L. Murray Alley, Fournier J. Gale, III, and H. Thomas Wells, Jr., Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for plaintiff.

William G. Somerville, Jr., and Lewis W. Page, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

McFADDEN, Chief Judge.

This case arises out of a dispute between Erika, Inc., a Delaware corporation, and

Blue Cross–Blue Shield of Alabama ("Blue Cross"), a non–profit corporation organized for the purpose of operating various health care service plans. The court has jurisdiction under 28 U.S.C. § 1332.

The coverage at issue is Blue Cross "C–Plus" coverage which provides coverage supplementary to that provided by the Medicare program of the federal government. Erika, which provides hemodialysis supplies for use by patients at home, claims that Blue Cross owes it certain sums payable under C–Plus contracts owned by its customers.

The case was tried to the court without a jury and this memorandum opinion is issued in lieu of findings of fact and conclusions of law in accordance with Rule 52, Fed.R. Civ.P.

Prior to 1975, the processing of claims for supplies of hemodialysis patients in Alabama was handled by University Hospital. Under this arrangement, supplies were shipped directly to patients and the processing of the patients' claims was done by University Hospital. Blue Cross has a practice of paying sums directly to providers of health care services who are residents of the state where valid assignments are executed by the subscribers. To accomplish this direct payment, Blue Cross had assigned a provider number to University Hospital. Pursuant to its standard procedures, Blue Cross then paid the amounts due under the various C–Plus contracts directly to University Hospital. In the summer of 1975, University Hospital decided to stop processing claims of its patients for supplies furnished by Erika. Thereafter Blue Cross paid the amounts due under the contracts for supplies furnished by Erika directly to its subscribers. Erika contends that this money should have been paid to it under one of two theories: (1) that a contract was formed between Blue Cross and Erika by which Blue Cross agreed to send the money directly to Erika; and (2) that the money should have been paid directly to Erika under "assignments" executed by the subscribers in favor of Erika. The court finds neither argument persuasive.

The contract alleged to exist is based on a series of communications between Erika and Blue Cross following the termination of billing service by University Hospital. On July 2, 1975, Aaron W. Barradale of Erika wrote to Andy Fox of Blue Cross and requested a provider number for Medicaid and Blue Cross. The relevant portion of the letter reads as follows:

> We will require an Alabama Blue Cross and Alabama Medicaid provider number, and instructions on your billing requirements in order to participate in both programs.

Mr. Fox responded by letter of July 17, 1975, which states in relevant part:

> Medicare beneficiaries may have Alabama C–Plus. File a copy of the SSA–1490 which was submitted to Prudential *and attach a copy of the remittance statement from Prudential* indicating Medicare's allowed charges. Send these claims to "*C–Plus Claims Department*, Blue Cross and Blue Shield of Alabama, 930 South 20th Street, Birmingham, Alabama 35298." (A provider number is not necessary since we intend to process these claims by special checks).

For a contract to exist between the parties based on these writings, the court must find that an offer was made, that the offer was accepted, and that there was consideration given. W. Jaeger, Williston on Contracts § 23 (1957). Professor Williston defines "offer" as follows:

> An offer necessarily looks to the future. It is an expression by the offeror of his agreement that something over which he at least assumes to have control shall be done or happen if the conditions stated in the offer are complied with. Unless the statement gives the person to whom it is addressed an assurance that, on some contingency at least, he shall have something, the statement is not an offer.

Williston on Contracts, § 24A. Under Alabama law, to render the contract valid, the agreement of the parties as expressed in the offer and acceptance must be certain and explicit and their full intention as-

certainable to a reasonable degree of certainty. *Dillon v. AFBIC Development Corp.*, 420 F.Supp. 572 (S.D.Ala.1976).

Erika contends that the July 2 letter was an offer to continue providing medical supplies to Blue Cross subscribers, and bases its contention on the fact that Erika requested a "provider" number, a device used for paying providers directly. Although the plaintiff is correct in pointing out that a "provider number" is generally used by insurance companies to accumulate claims and pay by computer, there was no evidence indicating that a request for a provider is a customary manner of requesting direct payment. Even if the letter could be construed as an offer, Blue Cross' refusal to assign a provider number constituted a rejection of that offer. Erika's response is that Blue Cross' agreement to pay the sums by "special checks" was in fact an acceptance of the offer. This argument cannot stand in light of the testimony that special checks were used for the payment of single claims both to subscribers and to providers. Indeed, the evidence indicated that Blue Cross used special checks more often in the case of subscribers than providers. The response of Blue Cross to the inquiry of Erika merely outlines procedures for the submission of claims and can in no way be deemed to constitute an acceptance of specific contract terms.

■ Even if the exchange of letters can somehow be construed as containing the essential elements of the agreement, no contract was formed because there was no consideration. Consideration for a promise is an act, a forbearance, or the creation, modification or destruction of a legal relation, or a return promise, bargained for and given in exchange for the promise. Restatement of Contracts, § 75. In the instant case, there was no consideration to Blue Cross from Erika for any promise made by Blue Cross. Although legal detriment to the promisee is as valid consideration as benefit to the promisee, *see* Corbin on Contracts, § 122, that consideration must be bargained for, and in the instant case there is no evidence that the action of Erika

in submitting bills in the form and manner set forth by Blue Cross and refraining from sending such bills to Blue Cross' subscribers was in any way bargained for. The court finds that the exchange of correspondence did not form a contractual obligation on the part of Blue Cross to pay the money directly to Erika.

The plaintiff's second argument is that it was entitled to receive direct payment from Blue Cross because of certain "assignments" executed by Blue Cross subscribers in favor of Erika. The form used by Erika read as follows:

> I request that payment under the medical insurance program be made directly to Erika Distributors, Inc. on any unpaid bills for supplies furnished to me during the period _____ to _____.

Erika contends that the execution of such a form in favor of Erika vests in Erika the right to receive direct payment of insurance proceeds.

■ There is no required form in which an assignment must be made. All that is necessary is for the assignor to indicate the intention to presently assign his rights to the assignee. The assignment must be specific, however, as to the rights transferred. Corbin on Contracts, § 879 (1958). The issue before the court is whether the language set out above expressed the present intention to assign accrued contract rights or something less. Specifically, the court must determine whether the executed form is a valid assignment or a mere authorization to pay. In this respect, the court is instructed by Professor Corbin:

> Where one has a right to funds in the possession of another, a communication to that other requesting and authorizing him to transfer a portion of them to a third person is not necessarily an assignment. The owner of the right undoubtedly has power to make an assignment at once transferring his right to a third party; but he also has power to create in the holder of the fund a power to effectuate such a transfer by a subsequent act. One who has power to assign also has power to do something less than a present as-

signment. Whether he has done the former or the latter is a matter of reasonable interpretation of his communication to the holder of the fund. . . .

An expression of intention to assign, communicated to the assignee, should hardly ever be interpreted as being a mere power of attorney to the assignee. But a mere communication to the holder of the fund (the obligor), containing no words of present assignment and merely authorizing and directing him to pay to a third party, may properly bear the interpretation that it is a mere power of attorney to the obligor himself, empowering him to effectuate a transfer by his own subsequent act. With this interpretation, the communication to the obligor is not an assignment; and like most other powers of attorney, it is revocable by its creator and it is terminated by its creator's death.

Corbin on Contracts, § 862.

The only case to expressly deal with an assignment of benefits form like the one before this court is *Presbyterian Hospital of Dallas v. National Life and Accident Insurance Co.*, 480 S.W.2d 497 (Tex.Civ.App. 1972). In that case the form submitted by the provider read as follows:

ASSIGNMENT OF BENEFITS. I hereby authorize the National Life and Accident Insurance Company to pay directly to Presbyterian Hospital all benefits due me, if any, by reason of the services described in the statements rendered and as provided for in the above policy contract with the aforementioned insurance company.

The court found that the wording did not assign to the provider of health care services the right to receive direct payments: " . . . [T]he 'assignment alleged is not actually an assignment of any interest in the policy, but only an authorization to the insurance company to pay benefits to the hospital. Such an authorization merely appoints the hospital as agent to receive the benefits due to the insured, and does not give it any independent right of recovery on the policy."

Although not bound by the holding in *Presbyterian Hospital*, this court is persuaded by the reasoning contained therein. An assignment of contract rights vests in the assignee the right to receive payment under the terms of the contract. Payment to a person other than the original beneficiary under the insurance contract necessarily creates some risk to the insurance company that it will pay to a third party improperly, and should an insurance company pay money due to the third party in the absence of a valid assignment, it would remain liable to the policy beneficiary for the full amount. In light of this fact, the court should require express language before honoring an assignment. The "assignment" in the instant case varies little from that contained in *Presbyterian Hospital*, and it purports to be little more than an authorization to Blue Cross to pay the benefits of the policy directly to the provider. Erika is thus merely the agent of the subscriber authorized to receive payments. While this court does not subscribe to a technical theory requiring the use of specific words to create a valid assignment, the court finds that something more than the language used in the instant case is necessary.

Since the court finds that the instrument executed by subscribers in this case was not a valid assignment of the right to receive the policy proceeds, it is not necessary to consider the validity and effect of the anti-assignment clause contained in the insurance contract. The court merely notes in passing that there is some conflict in the law as to the validity of anti-assignment clauses. *Compare, Missouri State Life Ins. Co. v. Robertson Banking Co.*, 223 Ala. 13, 134 So. 25 (1931), *and* Restatement of Contracts, § 151; *see generally*, Corbin on Contracts, § 873.

Blue Cross now holds a sum totaling $9,845.42 on C-Plus claims which it has not paid to anyone. Under the court's holding, Blue Cross is free to pay this money to its subscribers or to Erika as the authorized agent of its subscribers. The court has not considered the validity of claims for Major Medical coverage since such claims are be-

yond the scope of this lawsuit. Both the complaint and the pre–trial order made reference only to C–Plus claims, and to litigate the Major Medical claims would exceed the scope of this lawsuit.

Accordingly, judgment is due to be entered for defendant.