478 A.2d 303

STATE of Maryland, CENTRAL COLLECTION UNIT

v.

COLUMBIA MEDICAL PLAN.

No. 135, Sept. Term, 1983.

Court of Appeals of Maryland.

July 16, 1984.

Motion for Reconsideration Denied
Aug. 16, 1984.

John K. Anderson, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Michael H. Bereston, Asst. Atty. Gen., Baltimore, on the brief), for appellant.

Barrett W. Freedlander, Baltimore, for appellee.

Argued Before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COUCH, Judge.

In this case we are presented with two questions for review. Our threshold inquiry must necessarily relate to the procedural issue raised in the Court of Special Appeals: whether the order of the trial court denying a motion for reconsideration of an order sustaining a demurrer was an appealable final judgment, where the plaintiff alleged its inability to amend the declaration. The Court of Special

Appeals held it was an appealable final judgment and, in an unreported decision, dismissed as untimely the appeal to that court which was taken from a later entry of judgment for the defendant. No. 601 (Sept. 9, 1983) (per curiam). We think it was error to dismiss the appeal and in the interest of judicial economy we shall also decide the substantive issue raised but not decided in the Court of Special Appeals: whether the language of the hospital registration form which appellee's insured signed constitutes a valid assignment of benefits.

The facts of this case are undisputed. On June 28, 1977, Eva Parker was admitted to the University of Maryland Hospital for medical treatment. The hospital is owned and operated by the State of Maryland. From June 28, 1977 to August 1, 1977, Mrs. Parker received numerous medical services at the hospital and incurred a bill in the amount of Forty-one Thousand Three Hundred Thirty-four Dollars and Forty Eight Cents ($41,334.48). At the time she was under treatment Mrs. Parker was a member of the Columbia Medical Plan (Columbia), which is a health maintenance organization operating pursuant to Maryland Code (1982, 1983 Cum.Supp.), Health—General Article, §§ 19–701–734.

When Mrs. Parker was admitted and registered at the hospital she signed a registration form that reads in part as follows:

"I hereby authorize payment direct to the University of Maryland Hospital of the benefits for hospital expense otherwise payable to me as determined by the Insurance Company, but not to exceed the hospital's regular charges for this period of hospitalization. I understand I am financially responsible to the hospital for charges not covered by this authorization."

Mrs. Parker subsequently died without having paid the outstanding hospital bill or any part thereof. The hospital made demand upon the appellee, Columbia, for payment, relying upon the language in the registration form, as quoted above. Columbia refused to pay the hospital's

claim. Thereafter, the account was transferred from the University of Maryland Hospital to the appellant, Central Collection Unit, pursuant to Maryland Code (1957, 1982 Repl.Vol., 1983 Supp.), Article 41, § 71.[1]

Appellant filed suit in the Circuit Court for Howard County, to recover the costs of Mrs. Parker's medical treatment. Appellee demurred to the declaration alleging that the University of Maryland Hospital did not have a cause of action against it based on the language used on the registration form. Appellee asserted in its demurrer that the language in the registration form was not a valid assignment but merely an authorization to Columbia to pay the hospital directly; because the hospital was not an assignee of Mrs. Parker's insurance benefits it did not succeed to her rights and remedies against Columbia and, consequently, the hospital could not sue Columbia directly for the value of the medical services provided to Mrs. Parker.

On February 26, 1982, a hearing was held on the demurrer. On March 5, 1982 the trial judge issued a "Memorandum and Order" granting appellee's demurrer. However, the order did not grant all of the relief appellee was seeking, such as: "That the Plaintiff's cause of action be dismissed with prejudice;" and "That this Demurrer be granted without leave for Plaintiff to amend its pleadings." As a matter of fact, the order was silent as regards leave for appellant to amend. Appellant did not amend; rather, on March 23, 1982, appellant filed a Motion for Reconsideration asking the court to reconsider its grant of appellee's demurrer or, in the alternative, to enter a final judgment in favor of the defendant, since it had "no means to amend its declaration." On May 5, 1982,[2] the trial judge issued a "Memorandum and Order" denying appellant's motion for reconsideration; there was no reference to the alternative

---

1. This unit is responsible for the collection of all delinquent accounts and debts owed to the state or any agency, with certain exceptions.

2. While the trial judge signed the order on May 5, 1982, it was actually filed in the record on May 6, 1982.

relief requested, nor was a judgment for costs entered in favor of Columbia.

This status quo was maintained until March 15, 1983. At that time appellant wrote a letter to the trial judge reviewing the procedural history of the case and requesting that the court enter "Final Judgment which will be binding against" the state. Appellant stated in the letter that it had "no means with which to amend its pleadings." On March 29, 1983, the trial judge ordered judgment entered in favor of appellee.

On April 21, 1983, appellant filed an appeal in the Court of Special Appeals. That court dismissed the appeal as untimely. Thereafter, appellant filed a Petition for Writ of Certiorari, which we granted.

(1)

■ The first issue for consideration is whether the order of May 5, 1982 denying appellant's motion for reconsideration of the March 5, 1982 order sustaining the demurrer, was an appealable final judgment. The Court of Special Appeals held that it was and therefore held that the appeal filed in that court on April 21, 1983 was not timely. Maryland Rule 1012 a. We disagree.

The Court of Special Appeals reviewed both of the trial court's orders of March 5, 1982 and May 5, 1982. The court stated that the order of March 5, 1982 granting the demurrer was not an appealable final judgment. This, of course, is the position that appellant advocates; appellee takes a contrary stance. We agree with the Court of Special Appeals' analysis and conclusion on that point.

On March 5, 1982 the trial court granted appellee's demurrer, in a written order, but the order was silent regarding amendment. "Unless the court otherwise directs any of the proceedings, including ... pleadings, ... may be amended so that the case may be tried on its merits." Maryland Rule 320, § a.1. The court may also prohibit further amendment in its order. *See* Maryland Rule 320,

§ d.3.[3] Thus, when the court granted the demurrer but was silent as to amendment, in effect, it allowed appellant leave to amend. The case precedents hold consistently that an order sustaining a demurrer is not an appealable final judgment. *Martin G. Imbach, Inc. v. Deegan,* 208 Md. 115, 117 A.2d 864 (1955); *Pennsylvania ex rel. Warren v. Warren,* 204 Md. 467, 105 A.2d 488 (1954); *Ernst v. Keough,* 197 Md. 554, 80 A.2d 23 (1951); *O'Keefe v. Scott,* 198 Md. 310, 83 A.2d 860 (1951); *Montgomery County Welfare Board v. Donnally,* 195 Md. 442, 73 A.2d 505 (1950); *Goodman v. Clark,* 193 Md. 521, 69 A.2d 496 (1949); *Smith v. Baltimore & Ohio Railroad,* 168 Md. 89, 176 A. 642 (1935). However, Rule 345, § e. allows for an exception to this general rule where the order (1) sustains a demurrer to the entire declaration and (2) expressly prohibits amendment. In such a case the order "shall be deemed to include and constitute a final judgment for costs for the demurring party." *Id.*

Under the facts of this case, where the order did not expressly prohibit amendment, appellant was entitled, by law, to amend; therefore, the cases stating the general rule are applicable-the March 5, 1982 order was not a final appealable order.

■ The May 5, 1982 order denied the motion for reconsideration and in all respects our analysis of this order is the same as the previous order. The May 5, 1982 order did not constitute a final judgment since this order, like the former order, contained no actual prohibition on appellant's leave to amend. The Court of Special Appeals acknowledged that the May order was not final by its terms, but ruled that it was a " 'final judgment for costs for the demurring party' ", *State Central Collection Unit v. Columbia Medical Plan,* No. 601, slip op. at 7 (quoting Md.Rule 345, § e.) (Sept. 9, 1983) (per curiam), when "cou-

---

**3.** Md.Rule 320, § d.3., states:
  "Where a demurrer to any pleading is sustained, the court may, in its order, prohibit further amendment."

pled with" appellant's statement in its motion to reconsider, that appellant was without means to amend its declaration. *Id.* This position cannot be reconciled with the clear language of Rule 345, § e. As the court below stated, in order "to prevent amendment, and thus to permit an immediate appeal, [the rule] requires an actual prohibition of amendment." *Id.* at 5. This prohibition must be expressed in the court's order and should be reflected in the docket entry. *Griffin v. St. Mary's College,* 258 Md. 276, 265 A.2d 757 (1970), presented an issue similar to the case at bar. The trial judge sustained a demurrer and granted Griffin 15 days leave to amend. Griffin did not amend, but did note an appeal approximately one month later. The notice of appeal concluded " 'kindly further note that plaintiff does not elect to amend his declaration.' " *Griffin,* 258 Md. at 279, 265 A.2d at 758. The Court dismissed the appeal because it was not an appeal from a final judgment. The Court stated: "That Griffin allowed the time within which he could have amended to expire without taking any action does not improve his position." *Id.* at 279, 265 A.2d at 759; *see also Smith v. Baltimore & Ohio Railroad, supra; Ernst v. Keough, supra.* In *Griffin* our decision was not based on the requirements of Rule 345, § e.; however, the case is illustrative of our position that the order itself must reflect a final judgment, and we will not look to a party's actions or extrinsic statements in order to determine finality.

There being no finality under Rule 345 we look to Maryland Code (1973, 1984 Repl.Vol.), Courts & Judicial Proceedings, § 12–101(f), and § 12–301. Section 12–101(f) states:

"(f) *Final judgment.*—'Final judgment' means a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken."

Section 12–301 states in pertinent part:

"Except as provided in § 12–302, a party may appeal from a final judgment entered in a civil or criminal case

by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law."

▮ Appellee's position is that the docket entry of May 6, 1982, "Ordered that the Motion to Reconsider is denied," is sufficient under the statute to support an appeal. We disagree.

This Court has had numerous occasions to state what actions of the trial court constituted an appealable final judgment within the contemplation of section 12–301. In *Fred W. Allnutt, Inc. v. Commissioner of Labor and Industry,* 289 Md. 35, 40, 421 A.2d 1360, 1363 (1980), we stated as a general rule "the cases hold that a judgment or order of a court is appealable if it is so final as to deny the appellant the means of further prosecuting or defending his rights and interests in the subject matter of the proceeding."

▮ The basic premise is clear; it is the action of the trial court, the order of the court, which by its terms must reveal that it is so final as to conclude the litigation by determining the rights of the parties. This is the distinguishing factor and where we disagree with the position taken by the Court of Special Appeals. Expressions of intention by the trial judge are not final orders because they are always subject to change by the judge. *Waters v. Smith,* 277 Md. 189, 352 A.2d 793 (1976); *Lewis v. Lewis,* 290 Md. 175, 428 A.2d 454 (1981). Likewise, expressions of intention of a party "coupled with," *State Central Collection Unit,* slip op. at 7, an order cannot become a final order because the parties' intentions are still subject to change. In this instance if the trial judge had entered an order as appellant requested, there would have been no further opportunity to amend and it would have been appealable, but that was not done. Even though appellant stated in the motion that it was not possible to amend, it still had the opportunity to do

so. Therefore, until the court entered an appropriate order appellant did not have a right to appeal.

In March of 1983 appellant wrote a letter to the trial judge outlining the procedural history of the case and requesting that a final judgment be entered in favor of appellee.[4] This was done on March 29, 1983. The order of March 29, 1983 concluded the rights and denied appellant the means of further prosecuting the suit in the circuit court; that is the date from which a timely appeal is measured. In this instance the appeal filed in the Court of Special Appeals was, therefore, timely.

(2)

We now consider whether the language which appears on the University of Maryland Hospital registration form, beneath which appellee's insured affixed her signature, constitutes a valid assignment of her insurance benefits under appellee's insurance plan. If it is a valid assignment, then appellant is entitled to maintain its suit against appellee for the value of the covered medical services provided to appellee's insured. Maryland Rule 240; *Summers v. Freishtat,* 274 Md. 404, 335 A.2d 89 (1975); *see also James v. Goldberg,* 256 Md. 520, 261 A.2d 753 (1970). The trial court held that the language in the hospital form did not constitute an assignment of rights and, consequently, sustained appellee's demurrer. The Court of Special Appeals did not consider this issue as a result of its dismissal of the appeal on procedural grounds. We shall hold that there was a valid assignment and thus reverse the ruling of the trial court.

There are no reported Maryland decisions interpreting language purporting to assign medical benefits, nor are the authorities elsewhere in accord upon this question. Al-

---

**4.** Appellee asserts that appellant's request for final judgment estops it from bringing this appeal. We consider this argument to be unfounded. As we stated in *Ernst v. Keough, supra,* a plaintiff is entitled to ask that judgment be entered for the defendant so that an appeal can be taken. *Ernst,* 197 Md. at 556, 80 A.2d at 24.

though we are not bound by the holdings in cases decided in other jurisdictions, the parties direct our attention to several cases where courts have interpreted language purporting to assign medical benefits.

Appellant refers us to a case decided by the Missouri Court of Appeals, *Greater Kansas City Baptist & Community Hospital Association, Inc. v. Businessmen's Assurance Co.*, 585 S.W.2d 118 (Mo.Ct.App.1979). The language involved in this Missouri case was included in an American Hospital Association form and was virtually identical to the language used by the University of Maryland Hospital.[5] It stated:

> " 'I HEREBY AUTHORIZE PAYMENT directly to the below named hospital of the group hospital insurance benefits specified and otherwise payable to me but not to exceed the balance due of the hospital's regular charges for this period of hospitalization. I understand I am financially responsible to the hospital for charges not covered by the authorization.' "

*Id.* at 119. The Missouri Court interpreted this language as a clear expression of the intent of the parties to effect an assignment, stating that under Missouri law any language is sufficient to create an assignment if it shows the intention to transfer a right "clearly and unconditionally." *Id.* (quoting 6A C.J.S. *Assignments* § 49).

Appellee, on the other hand, relies on three cases where the courts determined that the alleged assignments were not effective as such but merely authorized the insurance companies involved to pay benefits directly to the providers of medical care.

---

5. The pertinent language in the Maryland Hospital form stated:
"I hereby authorize payment direct to the University of Maryland Hospital of the benefits for hospital expense otherwise payable to me as determined by the Insurance Company, but not to exceed the hospital's regular charges for this period of hospitalization. I understand I am financially responsible to the hospital for charges not covered by this authorization."

In *East Texas Life & Accident Insurance Co. v. Carver,* 407 S.W.2d 251 (Tex.Civ.App.1966), the relevant language was set forth in a Texas Standard Hospital Insurance form. It stated:

" 'Assignment of Benefits

"I hereby authorize the East Texas Life and Accident Ins. Company to pay directly to St. Michael's Hospital all benefits due me, if any, by reason of services described in the statements rendered, and as provided for in the above policy contract with aforementioned insurance company. I will pay, at _____ Texas for all such charges incurred or for all charges in excess of whatever sums may be paid by the insurance company above mentioned.

"I direct that Medical and/or Surgical benefits (if any) be paid to

| Dr. R. R. Brunazzi | Geo. H. Carver |
| Physician | Signature of Insured |
| L. Meyer | |
| Witness' " | |

*Id.* at 253. The court does not give a reason for ruling that the instrument is not an assignment; the court merely gives a definition of an assignment, "the act by which one person causes to vest in another his right or property," *Id.* at 254, and states the language under consideration "does not express an intent to make a grant or to vest in [the hospital] ... Carver's right, title or interest in the benefits payable under the policy." *Id.*

In a second Texas case the language of the purported assignment read:

" 'ASSIGNMENT OF BENEFITS. I hereby authorize the National Life and Accident Insurance Company to pay directly to Presbyterian Hospital all benefits due me, if any, by reason of the services described in the statements rendered and as provided for in the above policy contract with the aforementioned insurance company.' "

*Presbyterian Hospital of Dallas v. National Life & Accident Insurance Co.,* 480 S.W.2d 497, 498 (Tex.Civ.App. 1972). Relying on the previous Texas case the court stated

there was no assignment of any interest in the policy. The court also cites 16 Couch on Insurance 2d, § 63.50, wherein it states: "The direction on an insurance policy to pay to a designated person is not an assignment of the policy...." 16 Couch on Insurance 2d, § 63.50 (1983). While we do not dispute that statement generally, we find it is not dispositive of the issue before us because, in Maryland, one can assign a right to receive funds under an insurance policy. *Hewlett v. Home for Incurables,* 74 Md. 350, 24 A. 324 (1891).

The last case we are asked to consider is *Erika, Inc. v. Blue Cross/Blue Shield of Alabama,* 496 F.Supp. 786 (N.D.Ala.1980). In that case the form used read:

> " 'I request that payment under the medical insurance program be made directly to Erika Distributors, Inc. on any unpaid bills for supplies furnished to me during the period ____ to ____.' "

*Id.* at 788.

In determining whether the executed form was a valid assignment or a mere authorization to pay, the court quotes from 4 Corbin on Contracts, § 862, wherein Professor Corbin states that one has the power to assign such rights, but one also has the power to do something less.

> "An expression of intention to assign, communicated to the assignee, should hardly ever be interpreted as being a mere power of attorney to the assignee. But a mere communication to the holder of the fund (the obligor), containing no words of present assignment and merely authorizing and directing him to pay to a third party, may properly bear the interpretation that it is a mere power of attorney to the obligor himself, empowering him to effectuate a transfer by his own subsequent act."

4 Corbin on Contracts, § 862 (quoted in *Erika,* 496 F.Supp. at 789). However, Professor Corbin also states in this section that this particular issue "is more likely to arise in the field of gift assignments than in that of assignments for value." *Id.* He also states that "[w]hether the acts and

expressions of an alleged assignor are to be regarded as an assignment, or as a mere power of attorney, is a question of interpretation that is sometimes difficult to answer." *Id.*

Looking for guidance on this issue the *Erika* court relied on the reasoning in *Presbyterian Hospital of Dallas, supra,* in finding that there was not a valid assignment. However, as we noted earlier, the Texas cases contain virtually no discussion of the principles underlying their holdings.

The *Erika* court voiced a concern in protecting insurance companies from being liable to the original beneficiary of the policy if it pays a third party improperly. In order to afford this protection the court would "require express language before honoring an assignment." *Erika,* 496 F.Supp. at 789. However, this requirement is contrary to the weight of authority on this issue and even what that court required for a valid assignment. *See, e.g.,* 6A C.J.S. *Assignments* § 43 (1975) (and cases cited therein). The court addresses this requirement in its holding: "While this court does not subscribe to a technical theory requiring the use of specific words to create a valid assignment, the court finds that something more than the language used in the instant case is necessary." *Erika,* 496 F.Supp. at 789.

The court's holding is thus ambiguous. Further, we do not find this case convincing, for two reasons. First, as we discuss below, Maryland follows the general weight of authority and does not require express language in order to establish a valid assignment. Second, the language under consideration in *Erika* is markedly dissimilar to the language in each of the other cases we have reviewed, as well as the case *sub judice.* Moreover, because there is no underlying reasoning for the court's decisions in the Texas cases, we do not find them persuasive.

We have previously stated that an assignment need not contain any specific words in order to be valid. "[A] mere promise to assign, or an order that retains control over the fund, or a power of revocation, is generally held not to pass

legal title. [Citations omitted]. But if the intent is clear, no particular phraseology need be used" to establish a valid assignment. *Maryland Cooperative Milk Producers, Inc. v. Bell,* 206 Md. 168, 175, 110 A.2d 661, 664 (1955). This is the view taken by Professor Corbin.

"There is no required form in which an assignment for value must be made; all that is necessary is for the assignor so to express himself as to indicate an intention then and there to transfer his right to the assignee.

*   *   *   *   *   *

It is not always easy to determine whether the owner of a right has made an assignment or a mere promise to assign later on, or a promise to pay out of a fund to be collected. It depends entirely upon his expressions of intention; and it is a matter of interpretation, using all the methods of experience and common sense."

4 Corbin on Contracts, § 879.

The Missouri court refused to invalidate the assignment merely because it did not contain the words "assign" or "assignment" or "transfer," and so do we. In determining the validity of this assignment we look to the intention of the parties.

"We must determine the intentions of the parties from the language of the contract itself, not by what a party to the contract intended it to mean, or thought it meant, but 'what a reasonable person in the position of the parties would have thought it meant.'" [Citations omitted].

*James v. Goldberg,* 256 Md. at 527, 261 A.2d at 757. The intention of the parties is clear in the context of this case. Appellee's insured intended to transfer to the hospital her rights to the hospital benefits otherwise payable to her under the terms of her insurance policy. The language in the hospital form would lead reasonable persons in the position of the parties to believe that the University of Maryland Hospital obtained an independent right to recover those benefits under the assignor's insurance policy, which,

if not for the assignment, would be recoverable by the patient.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.