WILLIAM R. ADAIR, *vs.* DAVID WINCHESTER, *et al.—June 1835.*

M & P, partners in trade, delivered to R, as their agent, four promissory notes to be discounted for their use. Failing to get them discounted, R, with the approbation of M & P, placed them by way of pledge, with A, to secure the repayment of a sum which A agreed to, and did loan upon them. M & P becoming insolvent, executed a deed of trust of their estate to' W.; and A, notified of the transfer to W, who tendered him the principal and interest of his advance, refused to deliver up the notes, which have since been paid. Upon a bill filed, praying for an account and payment of the balance to W, *Held,* that Chancery had no jurisdiction of this claim, the bill presenting nothing more, than an action for money had and received.

Equity does not lend its aid to enforce the rights of the assignee of a chose in action, unless its interposition becomes necessary, by reason of the inability of a court of common law to do him adequate justice.

The assignee of a chose in action must pursue his remedies in the same tribunals, in which the assignor, had no assignment been made, was bound to seek them. When obstacles growing out of the assignment are so interposed, as to hinder, or render extremely difficult, the successful prosecution of his remedies at law, then will a Court of Equity extend to him, that equitable protection which his exigencies demand.

Over *quasi* trusts, courts of law have jurisdiction, and are competent to administer adequate and complete justice; under ordinary circumstances Chancery has no concurrent jurisdiction of them.

APPEAL from CHANCERY.

The appellees claiming under a deed of trust to them, from *Murray & Payson,* partners in trade, bearing date on the 30th of December 1826; exhibited their bill against the appellant, and his partner *John Adair* (since deceased) and *Murray & Payson,* claiming an account of, and payment of the proceeds of sundry promissory notes, which it was alleged, had been deposited with the *Adairs,* by the agent of *Murray & Payson,* to secure the payment of $1500, loaned by the former to the latter.

The bill alleged, that *Murray & Payson,* trading under the firm of *A. B. Murray & Co.* being pressed for money in June 1826, delivered to one *Reyburn,* as their agent, four promissory notes, amounting in the whole to $3229,04, to get discounted for their use. That failing to get them discounted, the agent with the approbation of *Murray & Co.,* placed them

by way of pledge, with the *Adairs*, to secure the payment of $1500, which they agreed to, and did loan upon them.

That subsequently in July of the same year, the firm of *Murray & Co.* being found to be insolvent, the partnership was dissolved, and the defendants formally notified, by an agent specially sent for that purpose, that the notes in question were their property, and the surrender of the same demanded upon a tender of the entire principal and interest of the amount advanced upon them; and that the surrender so demanded was refused. That since then the notes have all been paid. *Prayer* for an account of the proceeds of the notes; that the balance found due may be decreed to be paid to the complainants, and for general relief.

The answer of the defendants, admitted the deposit of the notes with them by *Reyburn*, the advance of $1500 upon them, and their subsequent payment; but they denied all knowledge of *Murray & Co.* in the transaction, insisting, that they dealt with *Reyburn* as the owner of the notes, and gave him a receipt for the same, as security for the principal and interest of the sum loaned. They declare their willingness to account to *Reyburn*, to whom alone they are responsible, and to him only upon the production of their receipt; and in conclusion they state, that the complainants if injured, should seek redress in a court of common law, and not in a court of Chancery, which has no jurisdiction over the subject of their complaint.

The question upon which the case turned in the Court of Appeals, renders it unnecessary to refer to the proof taken under the commission. *Bland*, Chancellor at July term 1833, decreed an account, and the Auditor having stated one accordingly, the same was subsequently ratified, and the amount ordered to be paid to the complainants. From this decree, the defendants appealed to the Court of Appeals, where the cause was argued before ARCHER, DORSEY, and CHAMBERS, Judges

JOHNSON, for the appellant.

1. The complainants have shown no right to call on the respondents to account for the notes. Their answer emphatically denies such right, and the answer of *Murray & Co.* is not evidence against them, nor is there any thing in the proof to fix them with such a responsibility.

2. If, however, the right to the note is established; as, at the time of filing the bill, they had been converted into money, and existed in that form, the remedy was in a court of law, by an action for money had and received. It is no answer to say, that complainants are entitled to go into Chancery, because a suit at law must have been in the name of their assignors, *Murray & Co.* If so, then prior to the act of 1825, the holder of a promissory note endorsed in blank, might go into Equity, because prior to that act, the holder of such a note could not recover in his own name, except in a few cases, in which the courts have concurrent jurisdiction, chancery cannot relieve, unless there is a total absence of all legal remedy, and this absence of legal remedy must be apparent on the face of the bill. A suit in this case, could have been maintained in the names of *Murray & Co.* for the use of the appellees, and their rights as assignees, would have been protected at law. *Owings and Piet vs. Low,* 5 G. and J. 134.

HINKLEY and WILLIAMS, for the appellees.

1. The right of the complainants to the notes, or their proceeds, is clearly established by the proof, and unless the objection to the jurisdiction of a court of Equity, is fatal, the decree must be affirmed.

2. There are several grounds upon which the jurisdiction of that court may be sustained. It is admitted on the other side, that the remedy at law, was by an action for money had and received; which is in itself an equitable proceeding, and in reference to which, the courts have concurrent jurisdiction. In addition to this, the complainants sue as trustees, and ask for an account, and the jurisdiction thence conferred, cannot be taken away, by an agreement as to the amount. *Wilson vs. Mason,* 1 *Cranch* 100. *Lenox vs. Roberts,* 2 *Wheat,* 337.

The bill is in effect, by one set of trustees, against another. The complainants are trustees, by the express terms of the deed, and the defendants, are so in point of law, in reference to the balance of the proceeds of the notes, after paying their own claim. Again,—if a suit at law could be maintained at all, it must be in the names of *Murray & Co.* for the use of the complainants, which until recently, would have left them entirely unprotected; the rights of the *cestui que use*, being originally, recognized only in courts of Equity. 1 *Mad. Ch. Pr.* 543.

DORSEY, Judge delivered the opinion of the court.

The first question for our consideration is; had the Chancery court jurisdiction over such a case, as is presented by the bill of complaint? View the case as you will, and it is in effect, nothing more than an action for money had and received. That by proceeding in a court of law, ample and perfect redress for the wrong complained of could have been obtained, has not been, and cannot be denied. How then can the appellee sustain the right of the Chancellor to adjudicate in such a case, consistently with the well settled general principle found in all the books on the subject, and announced as text law in *Mitf. Pl.* 123, that the courts of Equity will not assume jurisdiction, where the powers of the ordinary courts are sufficient for the purposes of justice."

Is there any thing in the facts of this case, either as charged in the bill, or disclosed in the proof, which removes it from the operation of the general rule? The mere fact of the complainants standing in the character of an assignee, will not sustain the jurisdiction. Although in a court of Chancery, the assignor is looked upon, as the trustee of the assignee, the *cestui qui trust:* equity does not lend its aid to enforce the rights of the assignee of a chose in action; unless its interposition become necessary, by reason of the inability of a court of common law to do him adequate justice: notwithstanding, in the language of 1 *Mad. Ch. Pr.* 545, the assignment, "is considered in the nature of a declaration of trust,"

and in 546, that courts of Equity " will protect the assignment of a chose in action, as much as the courts of law will that of a chose in possession." The same author in page 547 states, " that an assignee of a chose in action, as he is entitled to all the remedies of the seller, so he takes it subject to the same equity, as it was liable to in the assignors hands." He must pursue his remedies in the same tribunals, in which the assignor, had no assignment been made, was bound to seek them. When obstacles growing out of the assignment are so interposed, as to hinder, or render extremely difficult, the successful prosecution of his remedies at law, then will a court of Equity, upon the appropriate application, step forward, and extend to him, that equitable protection, which his exigencies demand. But this protective interposition is never afforded, until rendered necessary by the occasion. Is there any thing in the allegations of the bill, or the testimony adduced in their support, in respect to the situation, or conduct of the assignor, which renders a resort to a court of Equity, indispensable to prevent a failure of justice ? Does it appear that the appellees, whilst seeking redress in a court of law, would have encountered a shadow of difficulty, to which the assignor himself would not have been subjected ? Nothing of the kind is discoverable. Is it charged in the bill, or does the proof warrant the inference, that facts essential to the establishment of the plaintiffs claim, rest exclusively within the knowledge of the defendants, and that their disclosure can only be extorted by a bill of discovery ? The proceedings furnish no such intimation. Can their claim be classed under any of the heads, wherein courts of law and equity, have a general concurrent jurisdiction ? Certainly not. If then the jurisdiction of the Chancery court in the case at bar, can be sustained at all, it must be by reason of its exclusive jurisdiction in most matters of trust and confidence. But this is not such a trust as falls under the exclusive control of a court of Equity. It is a *quasi* trust, of which courts of law take judicial cognizance, are competent to administer justice adequate and complete ; and over which a court of Chancery,

under ordinary circumstances had no jurisdiction. This doctrine, when connected with the rule before recited, from *Mitford on Pleading*, is substantially asserted in *Cooper Eq. Pl.* 27, where in treating of the jurisdiction of a court of Equity, it is said, " it therefore exercises an exclusive jurisdiction in most matters of trust and confidence ; but not in all, for various species of trusts, as deposits, and all manner of bailments, and especially that implied contract, so highly beneficial and useful, of having undertaken to account for money received, to another's use, which is the ground of an action on the case, are cognizable at law. But in cases of trusts, or second uses (as they have been sometimes called) the exclusive jurisdiction of the courts of Equity is fully established." Our views upon the subject are supported, too, by 3 *Black. Com.* 432, where that learned commentator, after speaking of those subjects, over which courts of law and equity, have a concurrent jurisdiction, and of those in which a court of Chancery has the exclusive jurisdiction, (amongst which latter enumeration, he includes what he calls a technical trust) remarks, " but there are other trusts which are cognizable in a court of law, as deposits, and all manner of bailments ; and especially that implied contract, so highly beneficial, and useful, of having undertaken to account for money received to another's use, which is the ground of an action on the case, almost as universally remedial as a bill in equity." A similar doctrine has been sanctioned by an enlightened tribunal, in a sister State. *Ashley's Adm'rs. and Heirs vs. Denton*, 1 *Little* 86. Where the court after stating uses and trusts to be, " a favored part of the jurisdiction of the Chancellor," further observes, " but notwithstanding this acknowledged authority, it cannot be extended to every case, where one party has trusted another, or in other words, placed a confidence which has been abused. If so, every case of bailment, and every instance of placing chattels by loan or hire, would be swallowed up by courts of Equity. Nay, every case, where credit was given for debt, or duty, would soon be drawn into the same vortex. It ought then, to be confided to cases of con-

trolling rights, vested and remaining in trustees, created as such in some proper mode, and not be extended to all cases of abused confidence."

In matters of trust, of the kind now before the court, we hold that there is no ordinarily concurrent jurisdiction in courts of law, and courts of Equity; and we feel no disposition to carry the powers of a court of Chancery, further than they have been already legitimately extended; when by so doing, we give to the plaintiff at his pleasure, to deprive the defendant of the privilege of the trial by jury.

If authorities are necessary to show, that the mere fact of the assignment confers no jurisdiction; they may be found in, *Carter vs. Unit. Ins. Co.*, 1 *Johns. Ch. R.* 463. *Lenox et al., vs. Roberts*, 2 *Wheat.* 373.

Believing as we do, that the Chancery court has transcended its authority in assuming the jurisdiction it has exercised in this case, and that its decree must therefore be reversed; we forbear to express any opinion upon the other questions, which in the arguments of the counsel, were submitted to our consideration.

DECREE REVERSED, AND BILL DISMISSED WITHOUT COSTS, OR PREJUDICE.