ELIZABETH ANN WHITE ET AL.
vs.                              } JULY TERM, 1847
JOSEPH WHITE AND JOHN C. WHITE.

[JURISDICTION—REMEDY AT LAW—LIMITATIONS—NOTICE OF TRUST.]

THE allegations of the bill are, that forty-six shares of the stock of the Manhattan Company, of New York, were transferred to the defendant, Joseph White, in trust for the complainants, prior to the year 1839 ; that in January, 1840, said Joseph, by letter of attorney, empowered Campbell P. White to sell and transfer said shares to the defendant, John C. White, which, in January and February of the same year, was accordingly done.   That said defendant knew the stock was trust property, but had made no returns of the proceeds to complainants, though payment was duly demanded of him.   The bill then prays that John C. White may account for the sales of said stock and pay over the proceeds thereof, and for further relief.   Upon the question of jurisdiction, it was HELD—

That whether John C. White, the defendant, is himself to be regarded as the purchaser of this stock, or as the agent to sell and account for the same to the plaintiffs, the remedy at law is, in either aspect, complete and ample without the aid of a court of equity.

The transactions out of which the claim arose occurring early in 1840, and the bill not having been filed until January, 1846, the statute of limitations was held to be a flat bar to the plaintiffs' right to recover.

If the relation of trustee and *cestui que trust* once existed between these parties, that relation terminated as soon as the stock was sold, and the obligation to pay over the proceeds supervened, and then the right of action accrued and limitations began to run.

The statute of limitations does not apply to a purely technical trust, of which a court of chancery has exclusive jurisdiction.

The answer of John C. White denied notice of the trust, and it appearing, by proof, that he acted merely as the agent of his father, Campbell C. White, in the sale of this stock, and had paid over the proceeds to his principal, in which payment the complainants had acquiesced for more than five years, upon the merits of the case it was HELD—

That under these circumstances it would be very hard and setting a dangerous precedent, to hold him liable to pay it a second time.

5*

[The facts of this case will appear from the Chancellor's opinion :]

THE CHANCELLOR:

To the relief prayed by this bill, two objections are taken in the answer of the defendant, John C. White, against whom also a recovery is sought, which seem to the Chancellor insuperable. These objections are independent of the merits and will be first considered.

The bill alleges, that prior to the year 1839, forty-six shares of the capital stock of the Manhattan Company of New York, were transferred to the defendant, Joseph White, in trust for the benefit of the complainants—that on or about the 28th of January, 1840, the said Joseph executed a letter of attorney to Campbell P. White, of New York, empowering him to sell and transfer to the defendant, John C. White, also of New York, the said shares, and that in the months of January and February of the same year, the shares were transferred accordingly to said defendant, and that said defendant knew that the stock was trust property—that said defendant accepted and received said shares at the market value, which at the time was about $80 per share, but that he has made no returns of the proceeds derived from the sales of said stock, nor the interest accruing thereon, though payment has been duly demanded of him, and that he now owes and is indebted to the complainant for the whole amount of the sales, principal and interest. The bill then prays that the defendant, John C. White, may account for the sales of said stock, and pay over the proceeds of the same, and for further relief.

Joseph White, who was subsequently released by the complainants from all responsibility, by his answer admitted the truth of the allegations of the bill, and submitted to such decree as the court might think right.

The other defendant, John C. White, before meeting and denying upon their merits the bill of the complainants to a decree against him, relies by his answer—first, upon the want of jurisdiction of a court of equity, over the case made by the

bill, which, he insists, presents a case cognizable at law—and secondly, upon the act of limitations as a bar to the relief asked for.

The Chancellor is of opinion, that either of these defences is fatal to the complainant's right to recover in this court.

There is not certainly upon the face of the bill a single averment to show that the complainants would encounter any obstacle in a proceeding in a court of law to recover the proceeds of the sales of this stock. Whether the defendant John C. White is himself to be regarded as the purchaser, or as the agent to sell and account to the plaintiffs for the proceeds of the sales, (and there is some ambiguity in the allegations of the bill upon this point,)—still the legal remedy, in either aspect, is complete and ample, without the aid of a court of equity. The bill presents the case of a *single* transaction of the sale of stock, the particulars of which seem to have been known to the complainants, or of which the proof was entirely within their reach, without having recourse to the conscience of the defendant. As between him and them there was unquestionably no such trust as would bring the case within the exclusive jurisdiction of a court of equity. The charge, is, not that this stock was held by the defendant John C. White in trust for these complainants, but that it was so held by Joseph White, and that the transfer and sale was made in virtue of an authority derived from him.

Why then, if John C. White is liable at all, could not a recovery be had against him in a court of law? There is no complication in the accounts which requires the aid of a court of chancery to unravel—no discovery from the defendant to establish the facts upon which the recovery must be founded; nor does the bill profess to place the jurisdiction of the court upon that footing. Nor is there any thing in the relation of these parties, as trustee and cestui que trust, which places the transactions between them under the exclusive control of this court.

The cases of *Adair* vs. *Winchester*, 7 *G. & J.*, 114, and *Oliver* vs. *Palmer & Hamilton*, 11 *G. & J.*, 426, are supposed to be conclusive authorities against the complainant's right to proceed in this court upon this bill.

I am of the opinion that the statute of limitations, relied upon by this defendant, interposes a flat bar to the plaintiff's right to recover against him. The transaction out of which the claim arises, took place in the year 1840, and the proof shows, I think, very clearly, that the complainants, or some of them, had notice thereof soon thereafter, and yet the bill was not filed until January, 1846.

Now, if this defendant, John C. White, could, in any view of the case, be looked upon as a trustee to make sale of this stock, and that the relation of trustee and cestui que trust did at one time exist between him and these complainants, upon which hypothesis alone, as it seems to me, the jurisdiction of this court could be maintained; still, this relation terminated as soon as the stock was sold, and the obligation to pay over the proceeds supervened. From that time it ceased to be a continuing subsisting trust, and then, whether the remedy was at law or in equity, the right of action accrued, and limitations began to run. *Green* vs. *Johnson and wife*, 3 *G. & J.*, 389.

If, to be sure, the relation between these parties constituted a purely technical trust, of which a court of chancery had exclusive jurisdiction, limitations could not be successfully relied upon, because, in that case, there being no legal remedy, the statute could not be applied by analogy, and being in terms not applicable to courts of equity, could not be taken advantage of. But undoubtedly, as it appears to me, whatever may have been the character of the relation between them at one time, it terminated when the stock was sold, and the obligation to pay over the proceeds came into existence. *Angell on Lim.*, 349; *Kane* vs. *Bloodgood*, 7 *Johns. Chan. Rep.*, 90.

Indeed, the complainants themselves allege and show a termination of the trust, when they charge, as they do in their bill, the defendant's indebtedness to them in a large sum of money, being, as they aver, the proceeds of the stock, and the payment of which by the defendant to them they also aver had been duly demanded.

The Chancellor does not think that the circumstance of this defendant being a non-resident, deprives him of the benefit of the

statute ; since it is clearly shown that the defendant was in Baltimore more than three years before the present bill was filed—that his being there must have been, and was in point of fact, known to the complainants, and that they had full and ample opportunity, if they had thought fit, to proceed against him then. *Hysinger* vs. *Baltzell,* 3 *G. & J.,* 158.

But apart from these objections, I cannot bring my mind to the conclusion, that the complainants have any claim against this defendant, John C. White, upon the merits.

The evidence, I think, clearly shows that he is not only entirely blameless in this transaction, but that he has been guilty of no laches which could, upon any just principle, render him responsible, for the proceeds of this stock to these parties. There is nothing, as it appears to me, in the evidence, which brings home to him a knowledge that these shares of stock stood in the name of Joseph White in trust for the complainants, nor that he or they had any interest therein ; and in his answer, being in this particular directly responsive to the bill, which alleges notice of the trust, any such trust is expressly denied.   It is stated in the answer of this defendant, that in the months of January and February, 1840, a large amount of the shares of the stock of this banking company were sold by him, as a broker, for his father, Campbell P. White, and his uncle, Robert White, both of New York—that he knew them, and them only, in these transactions, and accounted with and paid them the money as his principals ; and the proof of Campbell P. White, under the New York commission, is in precise accordance with this statement in the answer.

There can be no sort of doubt, therefore, that this defendant, John C. White, has paid to the person by whom he was employed, the proceeds of the sales of this stock; and it also appears from the letters of Joseph White, the father of the complainants, by whom the stock was held in trust, addressed to the said Campbell P. White, that he knew that the money had been received by the latter.   The attempt, then, is, five years after the date of the transaction, to compel this defendant to pay the money a second time.   That he has already paid it is

undeniable, and it is equally undeniable, that he paid it to the person by whom he was employed to sell the stock, without notice of the trust, or of any circumstance which could awaken a suspicion that the person to whom he made the payment was not entitled to receive the money ; for the Chancellor thinks the effort to fix such knowledge upon him has been unsuccessful. To hold him liable, under such a state of facts, to see to the application of the money, would seem to be an extremely hard measure of justice—so hard, indeed, that I should be unwilling to adopt it without the most conclusive authority.

In addition to the evidence furnished by the letters of Joseph White to Campbell P. White, which clearly show that he knew of the receipt, by the latter, of the money for which the stock sold, the indorsement made by Joseph White on the account, as early as April, 1841, proves that he must have known that the money was placed to his credit on the books of John C. White & Sons, of which firm he was a partner.

Under all the circumstances of this case, and especially when we consider the long acquiescence of these parties in the payment made by the defendant, John C. White to Campbell P. White, it would be very hard, and setting a dangerous precedent, to hold him liable to pay it a second time.

The observations made by Chancellor Kent in *Tripler* vs. *Olcott*, 3 *Johns. Ch. Rep.*, 473, are very applicable to the present case, and strongly against the plaintiff's right to a decree.

It is believed to be true, as a general rule, that a sub-agent is accountable only to the superior agent who has employed him, and not to the principal, and that an agent employed by a trustee accounts with him, and not to the cestui que trust. *Story on Agency*, sec. 217. And I can see nothing in this case which should make the general rule inapplicable to it.

For the reasons which have been given, it is the opinion of the court that the complainants are not entitled to relief, and a decree will be passed dismissing the bill.

———

[No appeal was taken from this decree.]