*In the Matter of the Petition of Featherfall Restoration, LLC*, No. 17, September Term, 2024. Opinion by Gould, J.

**INSURANCE POLICIES – CHOSE IN ACTION – POST-LOSS ASSIGNMENTS – ANTI-ASSIGNMENT CLAUSE**

The Supreme Court of Maryland held that a post-loss claim for money payments under a policy is a chose in action, and, therefore, an assignable property right separate from the policy itself. Therefore, an insurance policy's anti-assignment clause prohibiting assignments of "this policy" does not bar an assignment of a single post-loss claim under the policy.

Circuit Court for Baltimore City
Case No.: 22-C-22-002071
Argued: December 9, 2024

IN THE SUPREME COURT

OF MARYLAND

No. 17

September Term, 2024

_____


IN THE MATTER OF THE PETITION OF
FEATHERFALL RESTORATION, LLC

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Gould, J.

_____

Filed: July 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

In this case, we consider whether an anti-assignment clause in a homeowner's insurance policy that prohibits an assignment of "this policy" without the insurer's consent applies to the assignment of a post-loss claim under the policy. For the reasons set forth below, we hold that it does not.

**I**

**A**

In early 2019, G.K. and K.K. (the "Policyholders") purchased a "High Value" homeowners insurance policy from Travelers Home and Marine Insurance Company ("Travelers") for their Potomac, Maryland residence. The one-year policy ran from February 23, 2019, through February 22, 2020. The policy contained an anti-assignment clause: "**5. Assignment.** Assignment of this policy will not be valid unless we give our written consent."

On May 20, 2020, approximately three months after the policy expired, the Policyholders notified Travelers of damage to their roof that they contended resulted from wind and a hailstorm that occurred on June 2, 2019. That same day, the Policyholders hired Featherfall Restoration, LLC ("Featherfall") to repair their roof.

At the Policyholders' request, Travelers arranged for Featherfall to attend an inspection of the roof on June 2, 2020. During the inspection, Travelers' claim representative found no signs of wind or hail damage, but instead observed signs of wear, tear, and deterioration of the roof shingles. As a result, Travelers denied the Policyholders' claim and on June 19, 2020, sent them a letter explaining the basis for the denial.

That same day, Featherfall emailed Travelers an "Assignment of Claim" form (the "Assignment") that had been executed by the Policyholders. Through this document, the Policyholders purported to "irrevocably transfer, assign, and set over onto Featherfall Restoration, LLC . . . any and all insurance rights, benefits, proceeds, and any causes of action under applicable insurance policies[.]" Featherfall also sent Travelers an opinion letter from its attorney stating that the Assignment was legally enforceable despite the anti-assignment clause in the policy.

Relying on the Assignment, Featherfall attempted to discuss with Travelers its coverage determination. Travelers refused, citing the anti-assignment clause in the policy. Travelers contended that the anti-assignment clause invalidated any attempt by the Policyholders to assign their claim to Featherfall without Travelers' express written consent, which it had not given.

**B**

Travelers' refusal prompted Featherfall to file a complaint with the Maryland Insurance Administration (the "MIA"). The Policyholders were not parties to the complaint. Featherfall asserted that it stepped into the Policyholders' shoes and thus enjoyed all rights they had under the policy, including the right to talk to the insurer and the right to receive a copy of the denial letter. Featherfall did not challenge the merits of Travelers' denial of the claim. Rather, it asked the MIA to compel Travelers to honor the Assignment and Featherfall's right to act in place of the Policyholders. Featherfall argued that, by refusing to provide a copy of the denial letter, Travelers violated section 27-303(6) of the Insurance Article of the Annotated Maryland Code, MD. CODE ANN., INS. ("IN")

2

§ 27-303(6) (2017 Repl. Vol.).[1] Featherfall also contended that, although not specifically listed in the statute as an unfair trade practice, Travelers' wider policy of refusing to honor all assignments violated IN § 27-102.[2] Travelers requested that the MIA use its discretionary enforcement power under IN § 27-104 to identify and address this policy as a prohibited unfair trade practice.[3]

Travelers responded that the anti-assignment clause prohibited the Policyholders from entering into the Assignment.

On August 19, 2020, the MIA issued a determination letter concluding that Travelers did not violate the Insurance Article because the Assignment was prohibited under the policy's anti-assignment clause, and Travelers' handling of the claim complied with Maryland law.

Featherfall timely requested a hearing on the MIA's determination under IN § 2-210(a)(2), arguing that, as a matter of law, it was error for the MIA to allow Travelers to use an anti-assignment clause to refuse to honor a post-loss assignment of an insurance claim.

---

[1] IN § 27-303 lists actions that constitute unfair claim settlement practices. Featherfall alleged that Travelers violated IN § 27-303(b) by "fail[ing] to provide promptly on request a reasonable explanation of the basis for a denial of a claim[.]"

[2] IN § 27-102 provides: "A person may not engage in the State in a trade practice that is defined in this title as, or determined under this title to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

[3] The Commissioner of the MIA has discretion to bring an enforcement action for an act or practice that, "although not defined in this title, is an unfair method of competition or an unfair or deceptive act or practice[.]" IN § 27-104(a).

3

At the pre-hearing conference, Featherfall and Travelers agreed that the material facts were undisputed and that the case was appropriate for resolution on motions for summary decision. In Featherfall's motion, it reaffirmed that it did "not want a ruling on the merits of the insurance claim[,]" but rather sought a declaration that (1) anti-assignment clauses do not reach post-loss assignments of benefits; and (2) refusing to honor an assignment violates IN § 27-303. Featherfall also reasserted its allegations under IN §§ 27-303(6) and 27-104. Featherfall made an additional allegation, which was not in its initial complaint, that Travelers violated IN §§ 27-304(2) and (4) by refusing to communicate with it about the claim.[4] Travelers argued that the anti-assignment clause is enforceable against post-loss assignments of claims and that its "unambiguous terms" prohibited the Assignment. Travelers also contended that it did not violate IN § 27-303 when it denied coverage to the Policyholders.

MIA Commissioner Kathleen A. Birrane (the "Commissioner") heard oral argument on the cross-motions on May 7, 2021. Ten months later, she issued a memorandum opinion granting Travelers' motion, denying Featherfall's motion, denying Featherfall's request for a hearing, and dismissing the case.

---

[4] IN § 27-304 expands the list of prohibited claim settlement practices to include those "committed with the frequency to indicate a general business practice[.]" Relevant here, IN § 27-304(2) provides that it is an unfair claim settlement practice to "fail to acknowledge and act with reasonable promptness on communications about claims that arise under policies[,]" and IN § 27-304(4) provides that it is an unfair claim settlement practice to "refuse to pay a claim without conducting a reasonable investigation based on all available information[.]"

4

The Commissioner determined that the anti-assignment clause prohibited the assignment of claims as well as the policy itself, which rendered the Assignment void. The Commissioner also determined that anti-assignment clauses are enforceable regardless of whether assignments occur pre-loss or post-loss, primarily relying on two cases that enforced anti-assignment clauses against post-loss assignments of claims: *Dwayne Clay, M.D., P.C. v. Government Employees Insurance Co.*, 356 Md. 257 (1999), and *Michaelson v. Sokolove*, 169 Md. 529 (1936). Thus, the Commissioner determined: (1) Featherfall was not a "claimant"; (2) Featherfall received no rights under the policy by virtue of the Assignment; and (3) Featherfall was not "aggrieved" by the MIA decision. The Commissioner therefore determined that Featherfall was not entitled to a hearing pursuant to IN § 2-210(a)(2), COMAR 31.16.10.09, or COMAR 31.02.01.03.

The Commissioner alternatively found that even if the Assignment was valid, Travelers did not violate IN §§ 27-303 and 27-304 when it refused to communicate with Featherfall about the claim. The Commissioner held that Travelers' actions were timely and reasonable because Travelers responded promptly to the claim, inspected the roof with Featherfall present, and sent a detailed denial letter within one month of receiving notice of the claim. The Commissioner determined that IN § 27-303(6) and §§ 27-304(2) and (4) do not include the refusal to recognize an assignment as an unfair claim settlement practice. Therefore, she declined to exercise her discretion under IN § 27-104 to find a violation on that basis.

5

**C**

Featherfall petitioned for judicial review of the Commissioner's decision in the Circuit Court for Baltimore City, coupling its administrative appeal with a request for declaratory and injunctive relief. The court affirmed the Commissioner's decision. The court also denied Featherfall's request for declaratory judgment, explaining that the Declaratory Judgment Act prohibits declaratory relief when a relevant statute specifically provides a special form of remedy.

**D**

Featherfall timely appealed to the Appellate Court of Maryland, and in a reported opinion, the court affirmed the judgment of the circuit court upholding the Commissioner's determination that the Assignment was invalid. *In the Matter of the Petition of Featherfall Restoration LLC*, 261 Md. App. 105 (2024).

The Appellate Court held that anti-assignment clauses are enforceable under Maryland law regardless of whether the assignment is made pre-loss or post-loss, explicitly rejecting any distinction between the two. *Id.* at 135-36. As did the Commissioner, the court primarily relied on *Michaelson* and *Clay*, both of which involved post-loss assignments that were rendered void by anti-assignment clauses.[5] *Featherfall*, 261 Md.

---

[5] Featherfall argued before the Appellate Court and this Court that the following four nineteenth century cases supported its position: *Whiting v. Independent Mutual Insurance Co.*, 15 Md. 297 (1860), *Washington Fire Insurance Co. of Baltimore v. Kelly*, 32 Md. 421 (1870), *Consolidated Real Estate & Fire Insurance Co. v. Cashow*, 41 Md. 59 (1874), and *Dickey, Tansley & Co. v. Pocomoke City National Bank*, 89 Md. 280 (1899). *Featherfall*, 261 Md. App. at 130-36. Travelers and the MIA disagree with Featherfall, and the Appellate Court was likewise not convinced that these cases supported Featherfall's

App. at 134-36. The court also rejected Featherfall's contention that the Assignment concerned only a claim and not the policy itself, describing the language of the Assignment, which purported to transfer "*any and all insurance rights, benefits, proceeds, and any causes of action* under applicable insurance policies[,]" as a broad transfer that went well beyond the mere assignment of a post-loss claim. *Id.* at 140-41. Finding no basis for Featherfall to claim aggrieved party status under IN § 2-210, the court agreed with the Commissioner that Featherfall lacked standing to pursue its claim. *Id.* at 141-44.

**E**

Featherfall filed a petition for writ of certiorari, which we granted. *In the Matter of the Petition of Featherfall Restoration LLC*, 487 Md. 264 (2024). Featherfall presented four questions for our review, three of which[6] boil down to whether the Commissioner erred in holding that the policy's anti-assignment clause barred the Policyholders' assignment of their claim to Featherfall.

**II**

**A**

When reviewing an administrative agency's final decision, we "look[] through the circuit court's and intermediate appellate court's decisions" and directly evaluate the

---

position. We have reviewed the cases and find them of little help in determining whether the Assignment to Featherfall is covered by the anti-assignment clause in the policy.

[6] Featherfall's fourth question addressed the circuit court's refusal to entertain its declaratory judgment claim. The circuit court was correct. The circuit court had jurisdiction to review the decision of the MIA under IN § 2-215. That section defined the available forms of relief, which did not include issuing a declaratory judgment.

agency's decision. *Montgomery Park, LLC v. Md. Dep't of Gen. Servs.*, 482 Md. 706, 724 (2023) (quoting *Anne Arundel County v. 808 Bestgate Realty, LLC*, 479 Md. 404, 419 (2022)). Accordingly, we are reviewing the Commissioner's decision here, not the decision of the circuit court or the Appellate Court.

An agency's conclusions of law are reviewed without deference. *Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 360 (2022). "[T]he interpretation of a contract, including the question of whether the language of a contract is ambiguous, is a question of law[.]" *Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 392 (2019) (quoting *Myers v. Kayhoe*, 391 Md. 188, 198 (2006)); *see also Moscarillo v. Pro. Risk Mgmt. Servs., Inc.*, 398 Md. 529, 540 (2007) (explaining that insurance policies are construed according to contract principles because an insurance policy is a contract). The application of Maryland case law is also a legal determination. *Plank v. Cherneski*, 469 Md. 548, 569 (2020). As such, we will review without deference the Commissioner's interpretations of the policy and Assignment as well as her application of this Court's precedent on post-loss assignments. And because these are matters that do not implicate the MIP's expertise, no deference to the Commissioner is warranted. *FC-GEN Operations Invs.*, 482 Md. at 360.

**B**

With limited exceptions, contracts are generally assignable under Maryland law. *See La Belle Epoque, LLC v. Old Eur. Antique Manor, LLC*, 406 Md. 194, 211 (2008) (finding that a lease agreement is assignable); *Macke Co. v. Pizza of Gaithersburg, Inc.*, 259 Md. 479, 482 (1970); *Bimestefer v. Bimestefer*, 205 Md. 541, 545 (1954). The parties

agree that one exception to the general rule favoring assignability is where the contract contains an anti-assignment clause, which is likewise generally enforceable under Maryland law. *See Macke Co.*, 259 Md. at 482; *Della Ratta v. Larkin*, 382 Md. 553, 570 (2004); *Pub. Serv. Comm'n of Md. v. Panda-Brandywine, L.P.*, 375 Md. 185, 188 (2003).

The parties dispute, however, whether the policy's anti-assignment clause applies to the Assignment. Featherfall contends that the Assignment did not purport to assign the policy, but rather the rights associated with a specific claim that arose under the policy. Travelers counters that the anti-assignment clause applies to "any right or claim under the Policy to which Travelers has not consented." According to Travelers, "[a]ny other interpretation would carve out atextual categories of assignable rights, like 'post-loss claims' based on 'public policy,' not the text of the contract." Similarly, the MIA argues that the language of the anti-assignment clause "necessarily eliminates the power to assign a claim that exists only because of the Policy."[7]

## C

We construe insurance policies as we do other contracts, namely, "based on what a reasonable person in the position of the parties would have understood the language to mean and not 'the subjective intent of the parties at the time of formation.'" *Credible Behav. Health*, 466 Md. at 393 (quoting *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86 (2010)). We focus, therefore, on the "ordinary and accepted meaning" of the contract's plain language. *Id.* at 394 (quoting *Ocean Petroleum*, 416 Md. at 88). And in doing so, we

---

[7] On June 16, 2022, when this case was before the circuit court, the MIA filed a notice to participate, and it joined as a Respondent.

frequently consult dictionary definitions "to identify the common and popular understanding of the words used in the contract as evidence of what a reasonable person in the position of the parties would have understood those terms to mean." *Tapestry, Inc. v. Factory Mut. Ins. Co.*, 482 Md. 223, 240 (2022) (quoting *W.F. Gebhardt & Co. v. Am. Eur. Ins. Co.*, 250 Md. App. 652, 668 (2021)). In addition, "we attempt to construe the contract as a whole, interpreting 'separate provisions harmoniously, so that, if possible, all of them may be given effect.'" *See Adventist Healthcare, Inc. v. Behram*, 488 Md. 410, 433 (2024) (quoting *Credible Behav. Health*, 466 Md. at 396).

**D**

The central issue here is whether, as Featherfall maintains, the Assignment operated to assign a specific claim, or, as Travelers maintains, "the Policyholders assigned the *whole policy* and all the rights and benefits flowing from it[.]" The MIA agrees with Travelers that the Assignment attempted to transfer all of the Policyholders' rights to Featherfall and that it "allowed Featherfall to simply stand in the shoes" of the Policyholders with respect to the entire Policy.

Travelers and the MIA argue that the policy and a "claim" under the policy are not "conceptually distinct[.]" We disagree. The policy establishes the terms of the contractual relationship between Travelers and the Policyholders. A claim is different. The policy uses the word "claim" to refer to specific requests for coverage or payment. For example, under "Claim Expenses," the policy discusses how claims arising under the policy will be handled. Elsewhere in the policy, "claim" is used to refer to specific requests for coverage or payment for specific losses:

10

- "We may investigate and settle any claim or suit that we decide is appropriate."

- The insured must submit proof of loss that includes "[e]vidence or affidavit that supports a claim under the Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery and Counterfeit Money coverage[.]"

- The insured must submit proof of loss that includes "[r]eceipts, bills or other records that support your claim for 'expenses[.]'"

- "The injured person or someone acting for the injured person will . . . [g]ive us written proof of claim, under oath if required[.]"

The distinction between a contract and a claim arising under it is firmly embedded in Maryland law, including in the insurance context. In *Ruberoid Co. v. Glassman Construction Co.*, this Court adopted the principle that "[i]n the absence of language to the contrary in the contract, a provision against assignment does not govern claims for money due or claims for money damages for nonperformance[.]" 248 Md. 97, 103 (1967) (quoting *Trubowitch v. Riverbank Canning Co.*, 182 P.2d 182, 188 (Cal. 1947)). Here, the anti-assignment clause does not, by its terms, apply to post-loss claims for money under the policy.

The same principle was also confirmed in *State of Maryland, Central Collection Unit v. Columbia Medical Plan*, where we held that an insured made a valid assignment of her right to hospital benefits under her health insurance policy. 300 Md. 318, 331-32 (1984). There, upon being admitted to the hospital, the insured signed a registration form that read, in part: "I hereby authorize payment direct to the University of Maryland Hospital of the benefits for hospital expense otherwise payable to me as determined by the Insurance Company[.]" *Id.* at 320. The patient died before paying the hospital's bill. *Id.* The hospital, relying on the registration form, demanded payment from the insurance company to no

11

avail. *Id.* at 320-21. The hospital, owned by the State of Maryland, transferred the account to the Central Collection Unit, which then sued. *Id.*

The issue in *Columbia Medical Plan* was whether the language in the registration form constituted an assignment or a mere authorization to pay the hospital directly. *Id.* at 321. If the former, the hospital succeeded to the insured's rights as an assignee; if the latter, the hospital had no direct action against the insurance company. *Id.* We concluded that the language of the hospital form demonstrated that the "[a]ppellee's insured intended to transfer to the hospital her rights to the hospital benefits otherwise payable to her under the terms of her insurance policy." *Id.* at 331. As a result, we held that "the University of Maryland Hospital obtained *an independent right* to recover those benefits *under* the assignor's insurance policy[.]" *Id.* (emphasis added). In so holding, we recognized the distinction between assigning the insurance policy and assigning "a right to receive funds under an insurance policy[,]" which we noted was permissible under Maryland law. *Id.* at 329 (citing *Hewlett v. Home for Incurables*, 74 Md. 350, 354-55 (1891)).

The distinction between a contract and a claim arising under it is also reflected in precedent from the early nineteenth century cases addressing choses in action. A chose in action is defined as a "proprietary right in personam, such as a debt owed by another person . . . or a claim for damages in tort" and a "right to bring an action to recover a debt, money, or thing." *Chose in action*, *Black's Law Dictionary* (12th ed. 2024). A chose in action is a form of property. *Roman Cath. Archbishop of Washington v. Doe*, 489 Md. 514, 539 (2025) (citing *Hoffman Chevrolet, Inc. v. Washington Co. Nat'l Savings Bank*, 297 Md. 691, 701 n.4 (1983)). The term "chose in action" has long been used to describe "all personal rights

12

of property which can only be claimed or enforced by action" including "rights of action on a contract[.]" W.S. Holdsworth, *The History of the Treatment of Choses in Action by the Common Law*, 33 HARV. L. REV. 997, 997 (1920) (quoting *Torkington v. Magee*, [1902] 2 K.B. 427, 430).

Such rights include the right to enforce claims for breach of contract or for benefits under a contract, such as payment of money. A chose in action is therefore distinct from the contract instrument from which it arose. *See Mayor & City Council of Balt. v. Thornton Mellon, LLC*, 478 Md. 396, 451 (2022) (holding that a judgment foreclosing the right of redemption was a chose in action, and therefore assignable, because "the judgment d[id] not vest legal title to real property—it grant[ed] an equitable interest or the *right* to acquire legal title upon the payment of the purchase price"); *Deering v. Deering*, 292 Md. 115, 127 (1981) (finding that a contractual right to pension benefits was a chose in action that gave the employee a property right to pension benefits when he performed his end of the employment contract).

We acknowledged the assignability of a chose in action as early as 1811. *See Noland v. Ringgold*, 3 H. & J. 216, 218 (Md. 1811). In 1829, the legislature abolished the common law rule that "an assignee of a *chose in action*[] cannot maintain an action at law in his own name[.]" *Kent v. Somervell*, 7 G. & J. 265, 270 (Md. 1835). Since then, this Court has recognized the ability of an assignee of a chose in action for the payment of money to maintain "an action at law in this state, in his own name against the debtor." *Id.* at 271; *see also, e.g.*, *Adair v. Winchester*, 7 G. & J. 114, 118 (Md. 1835) (stating that an assignee of a chose in action is "entitled to all the remedies of the seller"); *Crawford v. Brooke*, 4 Gill

13

213, 221 (Md. 1846); *Hampson v. Owens*, 55 Md. 583, 586 (1881). More recent cases have also confirmed that a chose in action, arising in tort or contract, is generally assignable. *See, e.g.*, *Thornton Mellon*, 478 Md. at 451; *Roberts v. Total Health Care, Inc.*, 349 Md. 499, 522 (1998); *Summers v. Freishtat*, 274 Md. 404, 407 (1975).

**E**

Applying the foregoing principles here, we hold that the policy's anti-assignment clause does not prohibit the assignment of Claim IHV6005 to Featherfall because a "reasonable person in the position of the parties" would not have understood a prohibition on the assignment of "this policy" to include a prohibition on the assignment of a single post-loss claim. *See Credible Behav. Health*, 466 Md. at 393. The title of the document is "Assignment of Claim." The Policyholders wrote the address of their home in the portion of the form titled "Loss Location" and included both a claim number and a policy number. The Assignment authorizes Featherfall to perform services "at the property located at the above listed Loss Location address." In paragraph 2, it states:

> **Assignment of Claim:** In consideration of work and services being rendered or to be rendered by Featherfall Restoration, LLC pursuant to the separately executed Work Authorization Agreement, as well as any change orders thereafter, I the undersigned Insured ("Assignor") hereby irrevocably transfer, assign, and set over onto Featherfall Restoration, LLC ("Assignee") any and all insurance rights, benefits, proceeds, and any causes of action under applicable insurance policies for the above mentioned claim.

This language is tailored to transfer only the Policyholders' rights to "the above mentioned claim"—identified specifically as claim number "IHV6005" and resulting from a loss that occurred on "6-2-2019." The Assignment does not purport to transfer the policy

14

itself, the ongoing contractual relationship with Travelers, or any future claims that might arise under the policy.

So, notwithstanding the Assignment, the Policyholders still had coverage under the policy for other losses. If a tree fell on their residence, the Policyholders could still pursue coverage under the policy. The same goes if, while vacationing, the Policyholders were robbed of personal belongings, or if their credit card was stolen, or if, upon returning from vacation, the Policyholders discovered that a power outage has caused all the food in their fridge to spoil. Simply put, the Policyholders did not assign their rights to coverage for any loss other than the specific loss for which they hired Featherfall, a point that Travelers conceded at oral argument before this Court.[8] Thus, the Assignment operated only to assign the Policyholders' rights with respect to a specific claim, not the policy itself, and was therefore not prohibited by the policy's anti-assignment clause.

**F**

Travelers and the MIA argue that, under both *Michaelson v. Sokolove*, 169 Md. 529 (1936), and *Dwayne Clay, M.D., P.C. v. Government Employees Insurance Co.*, 356 Md. 257 (1999), the Assignment is subject to the anti-assignment clause in the policy. The Appellate Court likewise determined that both cases favor the Commissioner's

---

[8] At oral argument, Travelers' counsel admitted that the policy was still in effect for the Policyholders' benefit for subsequent occurrences. Travelers' counsel also agreed that "something less than the entire Policy was transferred by the Assignment of Claim." Further, Travelers' counsel conceded that the Policyholders assigned rights and benefits, such as the right to payment and the right to negotiate coverage in the context of only this claim.

determination. *Featherfall*, 261 Md. App. at 134-36. We conclude that both cases are distinguishable on the facts.

*Michaelson* dealt with an anti-assignment clause in a life insurance policy, 169 Md. at 530; *Clay* involved a health insurance policy, 356 Md. at 261. We held that, under the particular facts in each case, the anti-assignment clauses invalidated the assignors' post-loss assignments of insurance benefits. *Michaelson*, 169 Md. at 533-34; *Clay*, 356 Md. at 269-70. In both cases, the beneficiaries did not contend, nor could they have credibly contended based on the express language of the anti-assignment clauses, that the clauses did not apply to their assignments by their plain terms. That's because in *Michaelson*, the policy explicitly provided that "neither the supplementary contract nor any benefits accruing thereunder shall be transferable or subject to surrender, commutation, anticipation, or encumbrance[.]" 169 Md. at 531. Similarly, in *Clay*, the policy contained a broad clause stating that "[a]ssignment of interest under this policy will not bind us without our consent." 356 Md. at 260.

Because these clauses prohibited the assignment of not only the policies but also any "benefits" or "interest" thereunder, the assignees in *Michaelson* and *Clay* were forced to make different arguments. In *Michaelson*, the appellant argued that a Maryland statute allowing assignees of choses in action to maintain suits in their own names somehow overrode the contractual restriction. 169 Md. at 534. In *Clay*, the physician-assignee contended that enforcing the anti-assignment clause against healthcare providers was contrary to public policy because accident victims needed to be able to assign benefits to

receive necessary medical treatment. 356 Md. at 262. In neither case did those arguments overcome the plain language of the anti-assignment clauses.

Here, however, Featherfall is not advancing a public policy argument to overcome the anti-assignment clause; Featherfall instead makes the argument that the assignees in *Michaelson* and *Clay* could not make—that the Assignment was not prohibited by the plain language of the anti-assignment clause. Thus, neither *Michaelson* nor *Clay* supports the notion that here, the anti-assignment clause prohibited the Assignment.

### III

In conclusion, we hold that the anti-assignment clause, which prohibits an assignment of the policy but not claims arising under the policy, did not invalidate the Assignment. Thus, Featherfall was a valid assignee and therefore had standing as an aggrieved party to request a hearing under IN § 2-210(a). We take no position on whether, on the merits, Travelers properly denied the claim. We do, however, conclude that Travelers should have honored the Assignment and handled Featherfall's claim no differently than if it had been asserted by the Policyholders.

We must now decide the appropriate disposition. The statute gives us three options:

(1) affirm the decision of the Commissioner;
(2) remand the case for further proceedings; or
(3) reverse or modify the decision of the Commissioner if substantial rights of the petitioners may have been prejudiced because administrative findings, inferences, conclusions, or decisions:

. . .

(iv) are affected by other error of law[.]

IN § 2-215(h).

17

We are mindful that the Commissioner made the alternative finding that Travelers handled the claim appropriately and therefore did not violate IN §§ 27-303(6) and 27-304(2) and (4). That said, we are not convinced that this finding was not influenced by her erroneous legal conclusion that Featherfall was not a valid assignee. For starters, Featherfall emphasized repeatedly that its complaint filed with the MIA was focused on Travelers' refusal to honor the Assignment, not on the merits of the denial. Thus, the Commissioner addressed an issue that was not even before the MIA.

Moreover, the record shows that Travelers refused to speak to Featherfall *solely* because it believed the Assignment was invalid. From that, we infer that Travelers would likely have spoken to Featherfall and handled the claim differently had it known that the Assignment was valid. To put it bluntly, we have our doubts that Travelers would have dealt with its customers, the Policyholders, the same way it dealt with Featherfall. With additional facts concerning how Travelers typically handles such situations with insureds, the Commissioner will be better positioned to determine the merits of Featherfall's claims.

Accordingly, we reverse the decision of the Commissioner and order a remand of this matter to the MIA for further proceedings consistent with this opinion.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED, WITH INSTRUCTIONS TO ORDER A REMAND TO THE CIRCUIT COURT WITH INSTRUCTIONS FOR THE CIRCUIT COURT TO REMAND TO THE MARYLAND INSURANCE ADMINISTRATION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO**

18

**BE PAID BY RESPONDENT TRAVELERS HOME AND MARINE INSURANCE COMPANY.**